IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM WEDDINGTON,<br><br>        Plaintiff,<br><br>        v.<br><br>UNITED NATIONAL INSURANCE COMPANY; and DOES ONE through TEN, inclusive,<br>        Defendant. | No. C 07-1733 SBA<br><br>**ORDER**<br>[Docket Nos. 18, 24] |

Currently before the Court are plaintiff William Weddington's Motion for Summary Judgment [Docket No. 18] and defendant United National Insurance Company's Motion for Summary Judgment [Docket No. 24]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS defendant United National Insurance Company's Motion for Summary Judgment, and DENIES Weddington's Motion, for the reasons set forth below.

## BACKGROUND

**I.    Factual Background**

    **A.    The Weddington Suit**

In 1993 plaintiff William Weddington contracted with ABC Cedar Homes, Inc. (ABC) for the purchase of a cedar split log home kit for the sum of $85,510. Joint Exs. re: Crossmotions for Summ.

J. Ex. 16 at 2. Weddington was unable to take delivery of the kit for an extended period of time because of delays he experienced in obtaining a building permit. Pl. Mot. for Summ. J. at 1. When Weddington finally obtained the necessary permit, ABC failed to deliver the kit citing financial problems and Weddington engaged the services of attorney Patricia Tsubokawa Reeves. *Id.*

In October 1997, Reeves filed suit on behalf of Weddington in Napa Superior Court against ABC and four individuals: Martin Querin and Sandra Querin (the Querins) and Donald G. Hardister (Hardister) and Betty Lou Hardister. Joint Exs. re: Crossmotions for Summ. J. Ex. 16 at 2. A fifth defendant was added later, James H. Liston. *Id.* Each of the individual defendants, with the exception of Betty Hardister, had either an ownership or management role in ABC at some point in time. *Id.* The case was transferred to Sonoma County by the court in response to a motion to change venue by Hardister. *Id.*

In January 1998, the Querins filed for bankruptcy protection, and Weddington eventually received approximately $11,000 from the Querins bankruptcy trustee. *Id.* at 3. In 1999, ABC filed for bankruptcy, and Weddington received no compensation from ABC, which proved to have no assets. *Id.*

**B.     Dismissals**

Hardister and Liston moved for summary adjudication of all causes of action, and these motions were ultimately granted except as to the fraud claim. *Id.* Hardister and Liston also moved for and were granted attorneys fees totaling approximately $80,000. *Id.* In November and December 2002, Hardister and Liston filed motions to dismiss in regards to the fraud claims because of the failure of Reeves to bring the case to trial within five years. Def. Mot. for Summ. J. at 4. Reeves filed an opposition to the motion in January 2003 arguing that the case was "impossible, impractical or futile" to bring to trial because of the pending bankruptcy of two of the alleged principals, and that the matter was stayed

because she had agreed to go to judicial arbitration within six months of the expiration of the five year statute. Pl. Mot. for Summ. J. at 2. In February 2003, the court subsequently dismissed the remaining fraud claims, with prejudice, for failure to bring the case to trial within five years. Reeves filed an appeal in March 2003 but never filed an opening brief. Def. Mot. for Summ. J. at 5. She later abandoned the appeal in January 2004, as she concluded that no final judgment had been entered and thus an appeal would be premature. *Id*. Reeves then filed a motion to set aside the previous judgment of dismissal, and this motion was denied by the court in July 2004, with sanctions awarded to counsel for Hardister and Liston for having to oppose a frivolous motion. *Id.* at 6. Weddington discharged Reeves as his attorney in September 2004. Pl. Mot. for Summ. J. at 2.

### C. Attorney Malpractice Claim

In March 2005, Weddington initiated a lawsuit against Reeves citing professional negligence (legal malpractice) and breach of fiduciary duty. Def. Mot. for Summ. J. at 9-10. The complaint alleged that Reeves was negligent for failing to prosecute the claim and committed a breach of fiduciary duty by failing to provide Weddington with realistic assessments of the case during the course of litigation and encouraging him to continue with his case without any reasonable basis for believing that he could prevail. *Id.* at 10. Upon receiving notification of the lawsuit, Reeves notified United National Insurance Company (United). Pl. Mot. for Summ. J. at 2.

### D. The United Contract

United's policy number LAW0007066 commenced June 15, 2004 and ran through June 15, 2005. Def. Mot. for Summ. J at 8-9. United initially accepted the defense under a reservation of rights, and assigned defense counsel to defend the case. *Id*. at 10. Soon thereafter however, United disclaimed coverage entirely and withdrew the defense, claiming that Reeves knew at the time of filling out the

insurance applications about the dismissals, knew of the recent rulings denying her attempt to reverse those dismissals, and knew that she continued to represent Weddington with respect to the claim that had been dismissed. *Id.* United's grounds for disclaiming coverage were based on two provisions contained within the insurance policy, question 5b and exclusion IIB. *Id.* Question 5b states,

> 5b. Is any attorney aware of any claim, circumstance, incident, act or omission during the last year, which might reasonably be expected to be the basis of a claim suit, arising out of the performance services for others? *Id.* at 12.

Reeves answered "no" to the above question on June 14, 2004. *Id.* at 7. United perceived this answer to be a material misrepresentation given that Reeves was aware when she signed the application that 1) the claims she had been prosecuting for Weddington had been dismissed by the court in early 2003 for failure to prosecute them to trial within five years, 2) that just eleven days before she signed the application, the same court denied her motions to set those dismissed claims for trial and to set aside the void judgment and sanctioned her attempts to do so as frivolous, and 3) that she continued to represent Weddington with respect to the claims. Id. at 11-12.

The second provision that United invoked to defend their actions was Exclusion 2b, which states, This policy does not apply to:

II. any CLAIM arising out of any WRONGFUL ACT occurring prior to the effective date of this policy if;
  A. the matter had previously been reported to any insurance company or
  B. if the INSURED at or before the effective date knew or could have reasonably foreseen that such WRONGFUL ACT might be expected to be the basis of a CLAIM. However, this paragraph B. does not apply to any INSURED who had no knowledge of or could not have reasonably foreseen that any such WRONGFUL ACT might be expected to be the basis of a CLAIM. .

*Id.* at 14. United asserted that Reeves' failure to report the dismissals was a wrongful act and therefore covered under this exclusion clause. *Id.* at 15.

After withdrawal of the defense, Reeves substituted in *pro per* and Weddington obtained a judgment

against her in the amount of $746,473. *Id.* at 11. Reeves assigned to Weddington all of her rights against United in exchange for Weddington's promise not to execute the judgment against her. *Id.* Weddington now sues as Reeves' assignee, to recover those amounts from United, under theories of breach of contract and breach of the implied covenant of fair dealing. *Id.*

## **LEGAL STANDARD**

### I. Summary Judgment

Under Federal Rule of Civil Procedure 56, a court may properly grant a motion for summary judgment if the pleadings and materials demonstrate that there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may be granted in favor of a defendant on an ultimate issue of fact where the defendant carries its burden of "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on the pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002); *Federal Trade Comm'n v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004).

## II. Implied Covenant of Good Faith and Fair Dealing

"In addition to the duties imposed on contracting parties by the express terms of their agreement, [California] law implies in every contract a covenant of good faith and fair dealing." *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 818 (1979). In the context of insurance contracts, the covenant refers not to the explicit terms of the policy itself, but to the obligation under which the insurer must act fairly and in good faith in discharging its contractual responsibilities." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal.App.4th 335, 350 (2001) (citation omitted). The California Court of Appeals has described the requirements for a claim for breach of the implied covenant of good faith and fair dealing as follows:

> [A]llegations which assert such a claim must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement. Just what conduct will meet these criteria must be determined on a case by case basis and will depend on the contractual purposes and reasonably justified expectations of the parties.

*Chateau Chamberay Homeowners Ass'n*, 90 Cal.App.4th at 350. An insurer's breach of the covenant of good faith and fair dealing is "ordinarily a question of fact to be determined by a jury by considering the evidence of motive, intent, and state of mind." *Id.* The exception to this is when "because there are no conflicting inferences, reasonable minds could not differ." *Id.* (citation omitted). When examining the language of an insurance policy, any ambiguities or uncertainties are construed against the insurance company. *Hanson v. Prudential Ins. Co. Of America* 783 F.2d 762 (9th Cir. 1985).

## ANALYSIS

### I. The Objective Test

Exclusion IIB states that the insurance policy does not apply if the insured, at or before the effective date, knew or could have reasonably foreseen that a wrongful act might be expected to be the basis of a claim. Pl. Mot. for Summ. J. at 5. Plaintiff argues that a subjective test should be applied to exclusion IIB to determine whether United was justified in revoking their defense of Reeves. *Id*. at 8. That is, the test should look to whether Reeves, and Reeves alone, believed that her handling of the Weddington case could possibly result in a malpractice claim. Plaintiff claims that Reeves' subjective awareness is in dispute regarding whether it was foreseeable that her actions in the Weddington case could be the basis of a malpractice claim. Reeves did not consider the dismissals to have been the result of any wrongful error on her part, she believed the dismissals would have been reversed on appeal, and therefore were not likely to be a basis of a claim. *Id*.

Defendant argues that to apply a subjective test would be erroneous given the language of the exclusion clause, and therefore the appropriate test would be an objective one. Def. Mot. for Summ. J. at 15. That is, according to defendant, the question is not whether the insured subjectively believed that a claim would be made, but whether a reasonable attorney, given what the insured knew about the incident, might expect the incident in question to be made the basis of a claim.

California law applies in this diversity action. *Continental Casualty Co. v. City of Richmond* 763 F.2d 1076, 1079 (9th Cir. 1985). There does not appear to be any California law directly on point addressing the standards to be utilized when interpreting the reasonableness language of exclusion clauses similar to that of exclusion IIB. Under the exclusion clause, claims are excluded if at or before the policy's effective date the insured either knew or "reasonably could have foreseen" that some omission prior to the effective date might be made the basis of a claim. Def. Mot. for Summ. J. at 14.

7

Courts considering contract language similar to the one at issue, containing the words "reasonably" and "foreseen," have held that an objective test is the more appropriate test to be applied and this has been the overwhelming trend within the majority of federal courts.

The objective test was best articulated by the Third Circuit in *Colliers Lanard & Axilbund v. Lloyds of London,* 458 F.3d 231 (3d. 2006). The Third Circuit laid out the test to encompass two parts. *Id*. at 237. The first part requires that the insured have knowledge of the relevant suit, act, error, or omission. *Id*. The second part is satisfied if the suit, act, error, or omission might reasonably be expected to result in a claim or suit. *Id*. This condition does not require that the insured actually form such an expectation. *Id*.

Applying the *Colliers* test to the matter at hand, the first condition in the exclusion would be satisfied if Reeves had knowledge of the relevant suit, act, error, or omission, which clearly appears to be the case here. *Id*. Reeves did possess this requisite knowledge as 1) she failed to bring the Weddington action to trial within five years, 2) the claims were dismissed with prejudice and 3) her motion to set aside the previous judgment of dismissal was denied by the court with sanctions awarded to opposing counsel for having to oppose a frivolous motion. Def. Mot. for Summ. J. at 11-12. It is evident from these facts that Reeves clearly had knowledge of the acts which led Weddington to file a malpractice claim against her. The first condition does not require that Reeves be aware that the acts committed will lead to a meritorious malpractice suit. *Colliers*, 458 F.3d at 237. All this condition requires is that Reeves be aware of acts that caused a malpractice claim to be filed against her. *Id*.

The second condition in the exclusion is satisfied if the suit, act, error, or omission might reasonably be expected to result in a claim or suit. Def. Mot. for Summ. J. at 14. This language does not require that the insured actually form such an expectation. *Colliers*, 458 F.3d at 237. Instead, the second condition looks to whether a reasonable professional in the insured's position might expect a claim or

suit to result. *Id*. Thus, it is unnecessary to determine whether Reeves formed an expectation that her handling of the Weddington claim would result in a malpractice action. It is important to note that the condition utilizes the word "might" and not "would". *Id*. All that needs to be considered is whether a reasonable attorney in Reeves' position might expect a claim or suit to result. *Id*.

A number of other federal courts have applied an objective standard to exclusionary clauses. The United States District Court for the Eastern District of Pennsylvania, applying Pennsylvania law, in *Mt. Airy v. Ins. Co. Thomas,* 954 F.Supp.1073 (W.D. Penn. 1997), favored an objective standard because an objective standard takes into account facts or information that the attorney knew or possessed. On the other hand, a subjective standard would include beliefs, impressions, feelings, etc. which could possibly color the attorney's view of the facts. *Id*. Such subjective information, the court believed, could too easily be related after the fact to excuse an attorney's failure to report known potential claims. *Id*. The court reasoned that only an objective standard could be squared with the insurance company's need to assess risk, as a subjective standard would defeat the ability of an insurance company to assess risk prior to issuing insurance. *Id*. The court further stated that as a matter of public policy, courts cannot allow the insured to perform this risk analysis function instead of the insurer. *Id*.

The United States District Court for the Eastern District of New York, applying New York law, is yet another court favoring an objective test for exclusion clauses similar to Exclusion IIB. The court stated that when evaluating the applicability of an exclusion clause, the court must disregard the individual's subjective beliefs and must instead engage in an objective inquiry, namely whether or not, under the circumstances of this case, a reasonable lawyer would know or could foresee the filing of a legal malpractice claim against them. *Coregis Ins. Co. v. Lewis, et al.,* 2006 U.S. Dist. LEXIS 55326, slip op. at 30 (E. D. N.Y 2006).

As can be seen, courts have refrained from employing a subjective standard, such as the one plaintiff requests, because of the concern that a subjective standard will give the insured too much leeway in claiming they were ignorant of the circumstances. As stated persuasively by the Third Circuit "the [subjective] approach, by rewarding the attorney who is ignorant of the law, or by encouraging disingenuous, after-the-fact justifications, could result in totally capricious and unpredictable outcomes." *Selko v. Home Insurance Company,* 139 F.3d 146, 152 (3d Cir. 1998).

The use of the term "reasonable" in the exclusion clause dictates that the standard is an objective one. *Mt. Airy,* 954 F.Supp. at 1079. To employ a subjective standard as plaintiff requests would be a disservice to the contract language. Utilizing an objective standard ensures that the language of a contract is given its due effect. *Id.* To solely allow the insured to decide whether or not their actions were wrongful vitiates the purpose of exclusionary language in insurance contracts. *Id.* If this was the case, there would be no feasible way for insurance companies to protect themselves because the insured could simply contend that they were unaware that their actions were wrongful. *Id.* The just way to ensure fairness when interpreting exclusionary clauses is to compare the present attorney's conduct to that of a reasonable attorney in a similar situation.[1]

**II.     Failure to Prosecute a Claim**

Viewed through the prism of the objective standard described above, a dismissal for failure to prosecute is an incident likely to give rise to a legal malpractice claim against the attorney responsible for handling the action. A comparable situation of an attorney neglecting to bring a lawsuit within the applicable statute of limitations, as Reeves did, was involved in *Home Ins. Co. v. Stegenga,* No. 90-275 (W.D.Pa July 3, 1991), *aff'd* (3d Cir. Feb. 3, 1992) cited in the *Selko* opinion. *Selko*, 139 F.3d at 151.

---

[1] Because of the clarity in which the court can resolve this matter based on Exclusion IIB, the court does not reach United's argument that Reeves' answering in the negative in response to Question 5b of the insurance contract constituted a material misrepresentation.

10

In *Stegenga*, an attorney neglected to bring a lawsuit before the statute of limitations had expired, having misled his client into thinking that he was diligently pursuing the matter. *Id.* The attorney argued that he did not subjectively know that his actions might lead to liability and maintained that his insurance contract disallowed coverage only if he was actually aware of the legal consequences of his actions. *Id.* However, the Third Circuit held that the attorney's interpretation was manifestly inconsistent with the language of the insurance policy. *Id.* The court stated that as long as the insured is subjectively aware of facts that, under an objective "reasonable person" standard would be seen as possibly giving rise to liability, he will not be covered for liability resulting from those incidents. *Id.* The court reasoned that this was the only way to interpret exclusion clauses otherwise an attorney would only need to make certain that he or she was ignorant of their duties in order to be insured for violating them. *Id.*

The court in *Mt. Airy* likewise stated that an attorney who has had a case dismissed for failure to prosecute could reasonably expect a malpractice claim to result. *Mt. Airy,* 954 F.Supp. at 1080. The attorney knew that he had not acted to prosecute his client's claim during the approximately twelve year period of its pendency and knew that the court had dismissed the client's complaint on that basis. *Id.* The court concluded that a reasonable person aware of these facts could reasonably expect that a malpractice claim might result. *Id.* Plaintiff argues that the circumstances surrounding the attorney malpractice case in *Mt. Airy* should be distinguished from the case against Reeves. Pl. Mot. for Summ. J. at 18-19. Plaintiff maintains that Reeves diligently prosecuted her case and kept her client informed whereas the attorney in *Mt. Airy* did nothing on the case for twelve years and as a result, that attorney had every reason to expect a malpractice claim. *Id.* However, whether or not Reeves may have believed that she handled her client's case diligently, the fact remains that like the attorney in *Mt. Airy,* her case was dismissed for failure to prosecute.

An attorney's failure to prosecute their client's case is a situation where a reasonable attorney might expect a malpractice claim to result. Whether the attorney believes she might reverse that result on appeal is irrelevant. A reasonable attorney having lost the case on the grounds Reeves did has to be aware that the incident might reasonably be expected to be the basis of a claim or suit. *Mt. Airy,* 954 F.Supp. at 1080. Under the test set forth by the Third Circuit in *Colliers,* a reasonable attorney in Reeves' position would have reported their actions, and therefore United was justified in withdrawing their defense of Reeves. *Colliers Lanard &* Axilbund, 458 F.3d at 231.

### III. United Did Not Lack Necessary Information

Finally, plaintiff argues that in the event the court adopts an objective standard, United did not have the necessary information at the time Reeves' defense was withdrawn to conclude that the exclusion should apply. *Id.* at 22. This contention lacks merit. United did not need any further information to make this determination. They knew that Reeves had failed to bring an action to trial within the five year limitation stipulated by California law, that the claims were dismissed with prejudice, and that her motion to set aside the previous judgment of dismissal was denied by the court. Def. Mot. for Summ. J. at 11. Whether Robert Feldman, the United claims representative who handled the claim did not examine Reeves' opposition to the motions to dismiss, was not advised that there were exceptions to the five-year dismissal statute, did not review the arguments put forth by Reeves to determine if they were meritorious, or attempt to consider whether the dismissal was the result of some misinterpretation on the part of the court as opposed to any wrongdoing on the part of Reeves is irrelevant and immaterial. United was not required to analyze every aspect of Reeves' work product or conduct their own due diligence to determine whether a court of law erred. However, this is exactly what plaintiff suggests United should have done. Pl. Mot. for Summ. J. at 18-19. This argument, unsupported by any caselaw, is unpersuasive.

## CONCLUSION

Under the objective test articulated above, a reasonable attorney faced with a similar set of circumstances as Reeves would have disclosed this information when applying for attorney malpractice insurance as responsive to Exclusion IIB. Whether or not Reeves subjectively believed that her actions constituted wrongful behavior is irrelevant. Therefore, United was justified in invoking Exclusion IIB and withdrawing their defense of Reeves. Accordingly, for the forgoing reasons, defendant's motion for summary judgment [Docket No. 24] is GRANTED . Plaintiff's motion for summary judgment [Docket No. 18] is DENIED.

IT IS SO ORDERED.

Dated: 2/29/08

SAUNDRA BROWN ARMSTRONG
United States District Judge